1  DONALD F. SETH, ESQ., CA SBN 92318
2  290 B Street, Suite 205
   Santa Rosa, CA 95401
3  (707)545-6370 telephone
4  (707)545-9770 facsimile
   donaldfseth@gmail.com
5

6  Counsel for Plaintiffs AQUAIR VENTURES, LLC,
   ANTONIA CITRINO, and
7  JOSEPH GEIGER

8

9

10              UNITED STATES DISTRICT COURT
11              NORTHERN DISTRICT OF CALIFORNIA

12

13 AQUAIR VENTURES, LLC, ANTONIA         Case No. C 08-02903 SC
   CITRINO, and JOSEPH GEIGER,
14

15            Plaintiffs,                **MEMORANDUM OF POINTS**
                                         **AND AUTHORITIES IN**
16     v.                                **OPPOSITION TO**
                                         **DEFENDANT**
17                                       **GULF STREAM COACH,**
                                         **INC.'S**
18
19 GULF STREAM COACH, INC., and          **MOTION TO DISMISS**
   DOES 1 through 30,
20
                                         Date:       August 1, 2008
21            Defendants.                Time:       10:00 a.m.
                                         Courtroom:  1
22
   _____/      _____
23

24
                        **INTRODUCTION**
25

26     Plaintiffs Antonia Citrino ("CITRINO") and Joseph Geiger ("GEIGER")

27

28 _____
   PLAINTIFFS' OPPOSITION TO GULF STREAM COACH, INC.'S MOTION TO DISMISS
   C 08-02903 SC

purchased a new motor home (hereinafter referred to as the "vehicle" or the "RV") manufactured by defendant GULF STREAM. CITRINO, age 68, and GEIGER age 70, are retired. They bought the RV in order to travel, to live in while looking for a retirement location outside California, and to haul their hobby equipment to hobby shows.

Before purchasing the RV, GULF STREAM'S authorized dealer told plaintiffs that they could receive substantial tax benefits by forming an out-of-state company, and purchasing the RV in the company's name. (Citrino Decl. ¶ 3). GULF STREAM'S dealer gave plaintiffs the name of a Montana law firm, Action Services LLC, that could help them set up a Montana limited liability company. (Citrino Decl. ¶ 4). On GULF STREAM'S dealer's advice, CITRINO and GEIGER contacted the law firm, and formed a Montana limited liability company, AQUAIR VENTURES, LLC ("AQUAIR"), for the purpose of purchasing the RV in its name. (Citrino Decl. ¶ 5). CITRINO and GEIGER would not have formed AQUAIR, and would not have purchased the vehicle in AQUAIR'S name, had GULF STREAM'S dealer not suggested it. (Citrino Decl. ¶ 6).

Plaintiffs purchased the vehicle in the name of AQUAIR because they believed that they could receive the proposed tax benefits only by buying the RV

in the name of an out-of-state business entity. (Citrino Decl. ¶ 8). Allowing GULF STREAM to evade important consumer protection laws under these circumstances would be inequitable.

Even though they purchased the RV in AQUAIR'S name, CITRINO and GEIGER always intended to use the RV primarily for pleasure trips and to look for, and possibly have built, a home for their retirement. (Citrino Decl. ¶ 8). CITRINO and GEIGER told the selling GULF STREAM dealer that their primary use would be personal, not business. (Citrino Decl. ¶¶ 8-9; Exhibit A, upper right-hand corner of page 1, box checked "personal, family or household").

The vehicle was sold with a new vehicle warranty covering any repairs, replacements, or adjustments needed due to defects in factory materials or workmanship. Soon after purchase, CITRINO and GEIGER found that the windshield leaked water, did not fit in the vehicle properly, and came out of the frame while the vehicle was traveling on the highway. (Citrino Decl. ¶ 10). After at least four attempts at repair, GULF STREAM has been unable to repair the windshield. (Citrino Decl. ¶ 11). Plaintiffs notified GULF STREAM that the vehicle is defective and that they desired a buy-back. (Citrino Decl. ¶ 12). GULF STREAM has refused to reimburse plaintiffs as required under California and Federal law, making this lawsuit necessary.

Plaintiffs oppose GULF STREAM'S motion to dismiss as follows.

## ARGUMENT

**1.    CITRINO AND GEIGER ARE THE OWNERS OF THE RV.**

a. <u>The business entity AQUAIR VENTURES, LLC should be disregarded in order to prevent injustice.</u>

California law recognizes that courts should at times disregard a corporation, or other business formation, in order to prevent injustice. *See Cooperman v. Unemp. Ins. App. Bd.*, 49 Cal.App.3d 1, 8 (1975); *Wenban Estate, Inc. v. Hewlett,* 193 Cal. 675 (1924)*; see also Witkin, Summary of California Law*, 9th Ed., 9 Corporations § 12 (1989).

Ordinarily, courts will disregard a business entity in the interest of, and at the request of, third persons who seek to avoid some injury or inequitable result to them. At times, however, courts have applied the doctrine to protect the interests of the owners of the business entity themselves. In *Conway v. Citrus Belt Land Co.*, 94 Cal.App. 533, 538 (1928) the corporate entity was ignored in order to absolve the corporation and its directors from liability for violation of statutes. *See also Cooperman v. Unemp. Ins. App. Bd.*, 49 Cal.App.3d 1, 8 (1975) (disregard of entity to give president and sole shareholder unemployment benefits).

A corporate entity should be disregarded if 1) the corporation is not only

influenced and governed by the owner, but that there is such unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased; and 2) the facts are such that adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice. *See Cooperman v. Unemp. Ins. App. Bd.*, 49 Cal.App.3d 1, 9 (1975). ("A court of equity may use the *alter ego* doctrine to prevent a palpable injustice."). Here, the court should disregard AQUAIR and allow CITRINO and GEIGER to bring claims under the Act in their own names in order to prevent an injustice.

    i. <u>Plaintiffs' "Unity of Interest"</u>: Aquair has only two owners: CITRINO and GEIGER, who each hold a 50% share. (Aquair Decl. ¶ 2). CITRINO and GEIGER formed the company specifically for the purpose of purchasing the RV. (Citrino Decl. ¶ 5). The RV was purchased not for AQUAIR'S business use, but for CITRINO and GEIGER'S personal use. (Aquair Decl. ¶ 5). This demonstrates the "unity of interest" of AQUAIR with CITRINO and GEIGER, in that the purpose of forming AQUAIR was simply to purchase an RV for CITRINO and GEIGER'S use. The plaintiffs' unity of interest also demonstrates that the "individuality and separateness of the corporation [or, as here, limited liability company] and the individual have ended and that it would be unjust to

persist in the recognition of a separate entity." *Cooperman v. Unemp. Ins. App. Bd.*, 49 Cal.App.3d 1, 9 (1975).

   ii. <u>Dismissing CITRINO and GEIGER'S claims would "promote an injustice"</u>: It was GULF STREAM'S own dealer that suggested plaintiffs set up a business to purchase the vehicle and gave them the name of the law firm to do so. GULF STREAM should not be allowed to evade consumer protection laws under these circumstances.

For the reasons outlined above, CITRINO and GEIGER respectfully request that GULF STREAM'S motion to dismiss their claims due to lack of standing be denied.

**2.    THE VEHICLE IS A "CONSUMER GOOD" AND AQUAIR IS A "BUYER"**

In the alternative, if CITRINO and GEIGER are found to have no standing to bring their claims, AQUAIR'S first claim for relief should not be dismissed, for the following reasons:

   a. <u>The RV is a "consumer good" as defined at Civ. Code§ 1791(a)</u>

The Song-Beverly Consumer Warranty Act (hereafter, the "Act") defines a "consumer good" as "any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes..." See §

1791(a). The RV purchased by plaintiff AQUAIR was new, and was bought for use primarily for personal, family, or household purposes. Plaintiff AQUAIR, in its attached declaration, states that it bought the RV primarily for the personal, family, or household use of CITRINO and GEIGER, the sole owners of AQUAIR. (Aquair Decl. ¶ 5). Since the primary purpose of the purchase was personal, family, or household use, the RV is a "consumer good" under the act.

    b. <u>Aquair is a "buyer" as explained in *Park City Services, Inc. v. Ford Motor Company, Inc.*, 144 Cal.App.4th 295 (2006)</u>

Civil Code Section 1791 defines a "[b]uyer" or "retail buyer" as "any *individual* who buys consumer goods." See §1791(b) (emphasis added). This definition at first would appear to exclude a limited liability company as a "buyer," because a limited liability company is not an "individual." However, an analysis of the Act's language demonstrates that the term "buyer" should be expanded beyond "individuals," to some business purchasers. A 2006 California appellate decision holds that after a series of amendments to the Act, the term "buyer" must be deemed to include some corporate purchasers. *See Park City Services, Inc. v. Ford Motor Company, Inc.*, 144 Cal.App.4th 295, 306 (2006).

The *Park City Services* court pointed out that amendments to the Act failed to harmonize all sections of the Act, and that the definition of "buyer" should include some businesses. The court explained:

> Regrettably, the Legislature sought to bring about this essentially substantive change simply by amending a single definition; it failed to make other seemingly necessary changes. For example, "buyer" is still defined, in part, as an "individual who buys consumer goods..." (Civ. Code § 1791, subd. (b)).

*Id.* at 306.

The court went on to say:

> We can avoid absurdity only by adding a gloss to the plain language of the statute. Thus, even though "buyer" is still defined as an individual purchaser of goods for personal use, it must be deemed to include some corporate purchasers of new motor vehicles for business use -- namely, those to whom "not more than five motor vehicles are registered in this state."

*Id.*

Since the term "buyer" includes business purchasers, plaintiff AQUAIR is a "buyer," and is entitled to bring a claim under the Act.

    c. <u>The weight of the vehicle is irrelevant to whether the Act applies</u>

GULF STREAM contends that since the vehicle weighs more than 10,000 pounds, the Act does not apply to this purchase. (See defendant GULF STREAM'S Memorandum of Points and Authorities in Support of Motion to Dismiss, 5:9-18). But, the weight of the vehicle is relevant only when the transaction involves a new vehicle purchased or used "primarily for business purposes." See § 1793.22(e)(2). Here, the purchase was primarily for personal, family, or household purposes. The Act therefore applies, regardless of how

---
PLAINTIFFS' OPPOSITION TO GULF STREAM COACH, INC.'S MOTION TO DISMISS
C 08-02903 SC      - 8 -

much the RV weighs.  See §§ 1793.2(d)(1) and (2); § 1793.22(e)(2).

# **CONCLUSION**

For the foregoing reasons, plaintiffs respectfully request that the Court deny GULF STREAM'S motion in its entirety.

Dated: July _11_, 2008

                         ___/S/_____
                         DONALD F. SETH
                         Attorney for plaintiffs ANTONIA CITRINO, JOSEPH GEIGER, and AQUAIR VENTURES, LLC