...

DARRYL J. HOROWITT  #100898
DANIA M. ALVARENGA  #244486
COLEMAN & HOROWITT, LLP
Attorneys at Law
499 West Shaw, Suite 116
Fresno, California 93704
Telephone: (559) 248-4820
Facsimile:  (559) 248-4830

Attorneys for Defendant,
GULF STREAM COACH, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AQUAIR VENTURES, LLC, ANTONIA CITRINO, and JOSEPH GEIGER,<br><br>Plaintiffs,<br><br>v.<br><br>GULF STREAM COACH, INC., and DOES 1 through 30,<br><br>Defendants. | NO.   C 08-02903 SC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date:       August 1, 2008<br>Time:       10:00 a.m.<br>Courtroom:  1 |

Defendant, GULF STREAM COACH, INC. ("GSC"), submits the following memorandum of points and authorities in reply to plaintiffs, ANTONIA CITRINO's ("CITRINO") and JOSEPH GEIGER's ("GEIGER"), opposition to defendant's motion to dismiss:

**INTRODUCTION**

GSC's motion to dismiss was premised on the grounds that: (1) AQUAIR is a limited liability company and, as such, is not a consumer under the Song Beverly Consumer Warranty Act ("Song Beverly); and, (2) CITRINO and GEIGER, as members of AQUAIR, lack standing to be parties to the action.

As to the first ground, AQUAIR contends it is a consumer under Song Beverly because when Song Beverly was revised, the legislature erred in not including business entities within the scope of the act.  CITRINO and GEIGER contend they are not precluded from suing because

1

1  they are the alter ego of AQUAIR and the court should overlook the form of the business entity
2  to prevent injustice to them should they be dismissed. Both points are, however, misplaced.
3      As is more fully discussed below, Song Beverly specifically precludes claims from
4  business entities, except in limited instances where the motor vehicle involved has a gross
5  weight of less than 10,000 pounds. That the legislature may have considered including business
6  entities in Song Beverly does not change this fact, and the case cited by plaintiffs does not
7  change this simple fact.
8      Though plaintiffs note that the court can disregard the corporate form of AQUAIR to
9  prevent injustice, plaintiffs have failed to demonstrate that: (1) they alleged sufficient facts in the
10 complaint to permit the court to do so; or (2) if such facts were alleged, that the court should
11 apply the alter ego doctrine here, because no injustice would occur if the court refused to do so
12 inasmuch as AQUAIR still has substantial rights to enforce the warranty in its claim brought for
13 violation of Magnuson-Moss. GSC thus submits that its motion to strike be granted without
14 leave to amend.

**DISCUSSION**

**1. GSC's MOTION TO DISMISS SHOULD BE GRANTED AS TO AQUAIR'S CLAIM UNDER SONG BEVERLY AS AQUAIR IS NOT A CONSUMER UNDER SONG BEVERLY**

18     There is no dispute that AQUAIR is a Montana limited liability company or that
19 AQUAIR was the purchaser of the RV in issue. What is in dispute is whether AQUAIR, as a
20 limited liability company, has standing to bring a claim under Song Beverly.
21     As was noted in GSC's motion, Civil Code § 1791 defines a buyer for purposes of Song
22 Beverly as "any *individual* who buys consumer goods." (Emphasis added.) In addition, under
23 Civil Code §1791, "consumer goods" means any new product or part thereof that is used,
24 bought, or leased for use primarily for ***personal, family, or household purposes***, except for
25 clothing and consumables." Where the consumer goods are a motor vehicle, such as a
26 recreational vehicle, Civil Code § 1793.22(e)(2) defines a new motor vehicle as one used for
27 personal, family or household purposes. It also provides that a new motor vehicle may be
28 defined as:

2

F:\CLIENTS\2250-Gulf Stream\27-Aquair-Citrino\Pldg\Reply to Opposition.v2.wpd    MEMO OF POINTS & AUTHORITIES IN REPLY TO OPPOSITION

> "New motor vehicle" also means a new motor vehicle *with a gross vehicle weight under 10,000 pounds* that is bought or used primarily for business purposes by a person, including a partnership, limited liability company, corporation, association, or any other legal entity, to which not more than five motor vehicles are registered in this state." (Emphasis added.)

In other words, the legislature realized that a business entity (such as AQUAIR) might purchase a motor vehicle and that motor vehicle should have the same protections as one sold to a consumer. It limited the protection for business entities to no more than five vehicles, each with a gross weight under 10,000 pounds. It does not create an exception for vehicles above that weight, which is why the weight of the plaintiffs' RV is in issue; it exceeds the 10,000 pound limit discussed in Civil Code § 1793.22(e)(2).

AQUAIR suggests that under *Park City Services, Inc. v. Ford Motor Company, Inc.* (2006) 144 Cal.App.4th 295, 206, its purchase of the RV is exempt. AQUAIR's reliance on *Park City Services* is, however, misplaced.

In *Park City Services, Inc. v. Ford Motor Company, Inc.*, Park City Services purchased a limousine manufactured by Ford and operated it in Texas. It claimed that the limousine was defective and sought relief under Song Beverly. The court noted that under the provisions of Civil Code § 1793.22, Park City could be entitled to the protections of Song Beverly because the vehicle weight was less than 10,000 pounds and thus fit the description of a motor vehicle. It found, however, that because Park City did not register the vehicle in California, they were not entitled to avail themselves of the protections of Song Beverly. It did not hold that a business entity had unfettered rights under Song Beverly. Instead, the court's holding is consistent with GSC's reading of § 1793.22(e)(2), as set forth above (e.g., that a business may have protection provided the vehicle weight was under 10,000 pounds, etc.).

AQUAIR also contends that because the RV was used for personal, family or household uses, Song Beverly applies. AQUAIR fails to cite any legal authority that supports this contention.

Contrary to AQUAIR's contention, we are not talking about a individual member's use of the RV for business purposes. We are dealing with a business entity (AQUAIR), which is not

3

an individual as that term is used in Song Beverly, which might allow its members to use the RV for a personal use.  Since CITRINO and GEIGER are not the purchasers, their use is irrelevant.  It is the status of AQUAIR as a limited liability company as purchaser.

Based on the above, GSC submits its motion to dismiss should be granted.

### 2. GSC'S MOTION TO DISMISS SHOULD BE GRANTED BECAUSE PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT THE ALTER EGO DOCTRINE SHOULD BE APPLIED

Plaintiffs apparently recognize that CITRINO and GEIGER should not be named as plaintiffs as they were not the purchasers of the RV.  They nevertheless contend that they can remain in the case because the business form of AQUAIR should be disregarded to protect the individual's rights as actual purchasers of the RV.  The court should not fall prey to this argument as it is without merit.

There is no rational explanation provided as to why CITRINO and GEIGER are named except as owners of AQUAIR.  AQUAIR is already a party and, with the exception of the claim under Song Beverly (which GSC submits should be dismissed), its claims under Magnuson-Moss and negligence remain.  AQUAIR thus suffers no prejudice

Plaintiffs cite to *Wenban Estate, Inc. v. Hewlett* (1924) 193 Cal. 675; *Cooperman v. Unemp. Ins. App. Bd.* (1975) 49 Cal.App.3d 1; and *Conway v. Citrus Belt Land Co.* (1928) 94 Cal.App. 533 in support of their contention that California law recognizes various instances when courts disregard the corporate entity in order to prevent injustice. (See Opp., p. 4.)  GSC submits that each of these cases is inapplicable.

Collectively, the cases deal with a different and unrelated sets of facts.  *Conway* deals with transactions between various corporations and an individual, outstanding debt, and whether the dealings between two corporations constitute a transfer or reorganization.  *Wenban* is based on an equitable claim of convoluted transactions related to bonds and trusts.  *Cooperman* is the only case which at first blush appears applicable; however, upon careful consideration it, too, becomes irrelevant.  In this case, a cameraman operating under a corporation was denied unemployment benefits because of his corporate entity.  Ultimately, the court concluded that he and the corporation were one and the same.  However, the court stated, "nothing said herein

4

F:\CLIENTS\2250-Gulf Stream\27-Aquair-Citrino\Pldg\Reply to Opposition.v2.wpd    MEMO OF POINTS & AUTHORITIES IN REPLY TO OPPOSITION

1 should be construed as applying to a different factual situation wherein an incorporator forms a corporation in order to obtain unemployment insurance benefits which he would not otherwise be entitled to." (*Cooperman v. Unemployment Ins. Appeals Bd.* (1975) 49 Cal.App.3d 1, 10.) Thus, similar to this case, the court chose not to decide the status of a corporation purportedly established to confer a specific benefit, as is presently alleged.

Morever, even by plaintiffs' own standards, they still fail to meet the required threshold. Plaintiffs affirm that the mere fact that GEIGER and CITRINO are the only two owners of AQUAIR and that they allege the RV was for personal use suffices to show unity of interest to disregard the firmly embedded corporate entity. This is simply not enough.

Plaintiffs' attempt to appeal for sympathy by mentioning GEIGER's and CITRINO's age and mention of hobbies is a red herring since plaintiffs fail to provide any actual facts to support the contention that the individuality and separateness of the corporate entity and the individuals has ended. Instead of actual reasons, plaintiffs merely disgorge blanket statements and partisan conclusions. Plaintiffs entirely fail to show the crucial components of unity of interests. For example, the question remains as to whether AQUAIR makes any profit, conducts any other business, and how AQUAIR's entity benefits GEIGER and CITRINO.

Additionally, plaintiffs rhetorically state that injustice will occur, yet once again they fail to indicate what injustice would occur, why or how. Thus, although a two-part test is set up, and plaintiffs constantly refer to the potential injustice, there is no actual tie connecting any of these contentions and cases with plaintiffs. Because plaintiffs have failed to establish themselves as individual consumers, GSC's motion to dismiss should be granted.

**CONCLUSION**

Based on the foregoing, GSC respectfully requests that the Court grant its motion to dismiss.

Respectfully submitted,

Dated: July 18, 2008        COLEMAN & HOROWITZ, LLP

/s/ Dania M. Alvarenga
By: _____
DANIA M. ALVARENGA

5

F:\CLIENTS\2250-Gulf Stream\27-Aquair-Citrino\Pldg\Reply to Opposition.v2.wpd   MEMO OF POINTS & AUTHORITIES IN REPLY TO OPPOSITION