UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AQUAIR VENTURES, LLC, ANTONIA CITRINO, and JOSEPH GEIGER,<br><br>    Plaintiffs,<br><br>    v.<br><br>GULF STREAM COACH, INC.<br><br>    Defendant. | No. C-08-2903 SC<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS |

## I. INTRODUCTION

Aquair Ventures, LLC ("Aquair"), Antonia Citrino, and Joseph Geiger (collectively, "Plaintiffs") brought this suit against Gulf Stream Coach, Inc. ("Defendant" or "Gulf Stream") in the Sonoma County Superior Court. See Notice of Removal, Docket No. 1, Ex. A ("Compl."). Plaintiffs seek to recover damages for Gulf Stream's alleged willful violation the Song-Beverly Consumer Warranty Act, California Civil Code section 1790 et seq., violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq., and negligence. See id. Gulf Stream invoked the Court's diversity jurisdiction and removed the action from the Superior Court on June 11, 2008. See Notice of Removal.

Before the Court is Gulf Stream's Motion to Dismiss. Docket No. 5. Plaintiffs filed an Opposition and Gulf Stream filed a Reply. Docket Nos. 10, 12. Having considered the parties' arguments thoroughly, the Court hereby GRANTS IN PART and DENIES

IN PART Gulf Stream's Motion for the reasons set forth below.

**II.   BACKGROUND**

Citrino and Geiger reside in Santa Rosa, California. Compl. ¶ 1. Aquair is a Montana corporation with its principal place of business in California. Notice of Removal ¶ 7. Gulf Stream is an Indiana corporation with its principal place of business in Indiana. Id. ¶ 8. Citrino and Geiger are the sole owners of Aquair. Compl. ¶ 1.

According to the Complaint, in May 2006, Aquair purchased a new 2006 Gulf Stream Tour Master motorhome ("Vehicle") from California RV Supercenter ("Dealer"), a Gulf Stream dealer, for $206,543.00. Id. ¶ 5, Ex. A.[1] At the time of purchase, Aquair and the Dealer executed a Retail Installment Sale Contract. Id. Ex. A ("Contract"). Aquair is the only name that appears in the "Buyer" section at the top of the Contract. Id. In seven different places on the Contract, Aquair signed as the buyer and guarantor. Id. Each signature appears to have been executed by Citrino, in the form "Aquair Ventures, LLC by Antonia D. Citrino, Member." Id. Aquair indicated that the primary use for which the

---

[1] When considering a motion to dismiss, the court is generally limited to the allegations in the complaint, without extrinsic evidence. See e.g., Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). However, where another document is attached to the complaint, as it was here, the court may treat that document as part of the complaint and consider it when ruling on a motion to dismiss. See id.; Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). The Court therefore considers the Retail Installment Sale Contract between Aquair and the Dealer as part of the Complaint. See Compl. ¶ 5, Ex. A.

-2-

1 Vehicle was purchased was "personal, family or household." Id.

2 At the time of purchase, the Vehicle was covered by a
3 warranty. The warranty protected the floor, walls, and roof for
4 the lesser of two years or 24,000 miles, and the construction of
5 the Vehicle and its original components for the lesser of one year
6 or 12,000 miles. Compl. ¶ 7. The warranty included all repairs
7 and adjustments, including parts and labor. Id.

8 The Vehicle was allegedly defective at the time Aquair
9 purchased it. Id. ¶ 8. Specifically, the windshield did not fit
10 properly and came out of the frame while the Vehicle was traveling
11 on the highway. Id. Plaintiffs took the Vehicle to the Dealer
12 for repairs and sent written notice of the defect to Gulf Stream.
13 Id. ¶ 9. Gulf Stream attempted on at least four occasions to
14 repair the Vehicle. Id. Despite these attempts, the windshield
15 still does not fit properly, so that water enters the Vehicle
16 during rain or when the Vehicle is being washed. Id.

17 The alleged defects limit the use, value, and safety of the
18 Vehicle. Id. ¶ 10. Aquair requested that Gulf Stream buy the
19 Vehicle back, but Gulf Stream refused to do so. Id. ¶ 11.

### III. LEGAL STANDARD

22 A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss
23 tests the sufficiency of the complaint. Dismissal pursuant to
24 Rule 12(b)(6) is appropriate if the plaintiff is unable to
25 articulate "enough facts to state a claim to relief that is
26 plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct.
27 1955, 1974 (2007). When evaluating a motion to dismiss, the court

-3-

1 accepts the facts as stated by the nonmoving party and draws all
2 reasonable inferences in its favor. See Everest & Jennings, Inc.
3 v. Am. Motorists Ins. Co., 23 F.3d 226, 228 (9th Cir. 1994).
4 Furthermore, the court must assume that all general allegations
5 "embrace whatever specific facts might be necessary to support
6 them." Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 521
7 (9th Cir. 1994).

**IV.   DISCUSSION**

Gulf Stream moves the Court to dismiss Citrino and Geiger from all claims on the basis that they lack standing to sue, and to dismiss the first cause of action, for willful violation of the Song-Beverly Consumer Warranty Act, as to all Plaintiffs.

**A.   Standing**

Gulf Stream contends that because neither Geiger nor Citrino purchased the Vehicle, and neither owns the Vehicle now, neither has standing to sue. See Mot. at 4. Plaintiffs respond that the Court should disregard Aquair's corporate status and treat Citrino and Geiger as the owners of the Vehicle. Opp'n at 4-6.

Standing may be either constitutional or prudential in nature. See Fleck & Assocs. v. City of Phoenix, 471 F.3d 1100, 1103 (9th Cir. 2006). Constitutional standing requires "(1) a threatened or actual distinct and palpable injury to the plaintiff; (2) a fairly traceable causal connection between the alleged injury and the defendant's challenged conduct; and (3) a substantial likelihood that the requested relief will redress or prevent the injury." Hong Kong Supermarket v. Kizer, 830 F.2d

-4-

1078, 1081 (9th Cir. 1987). Prudential standing requires that the plaintiff "(1) assert his own rights, rather than rely on the rights or interests of third parties; (2) allege an injury that is more than a generalized grievance; and (3) allege an interest that is arguably within the zone of interests protected or regulated by the statute or constitutional guarantee in question." Id. Failure to satisfy any of the constitutional or prudential requirements precludes standing. See id.

The first element of constitutional standing, injury in fact, is the central issue here. This element "necessitates a showing of 'an invasion of a legally protected interest' that 'affect[s] the plaintiff in a personal and individual way.'" Fleck & Assocs., 471 F.3d at 1104 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 & n.1 (1992)). "A plaintiff seeking to invoke federal court jurisdiction must plead that *he* has suffered some cognizable injury to make the threshold showing of a case or controversy." Id. (emphasis in original).

Citrino and Geiger have failed to plead an injury in fact. As alleged in the Complaint, Aquair is the sole owner of the Vehicle. Aquair purchased the Vehicle in its own name. Neither Citrino nor Geiger was a party to the purchase. There is no allegation in the Complaint that Aquair has sold or transferred title to the Vehicle to either Citrino or Geiger. As Citrino and Geiger are not the purchasers or owners of the Vehicle, and they do not allege any personal injuries resulting from the alleged defects, they lack standing.

Plaintiffs' attempts to avoid this outcome are improper.

-5-

Rather than arguing that the Complaint supports standing, Plaintiffs argue that the Court should disregard Aquair as a corporate entity, claiming that Geiger and Citrino only formed the entity based on the advice of the Dealer in order to qualify for favorable tax treatment. See Opp'n at 2-4. Plaintiffs did not raise this issue, or allege the supporting facts, anywhere in the Complaint. With limited exceptions, the Court cannot consider material beyond the pleadings in ruling on a Rule 12 motion. See Hal Roach Studios, supra note 1, 896 F.2d at 1555; Fed. R. Civ. P. 12(d). The Court therefore declines to consider the declarations submitted by Citrino and Aquair. See Docket Nos. 11-1, 11-3.

Even assuming, as the Court must, that all of the facts alleged in the Complaint are true, Citrino and Geiger have not suffered any injury for which they can recover. Citrino and Geiger have thus failed to plead facts supporting an essential element of standing. The Court therefore GRANTS Gulf Stream's motion as to Geiger and Citrino and dismisses their claims without prejudice. See Fleck & Assocs., 471 F.3d at 1104, 1107 (dismissal for lack of standing should be without prejudice).

**B.    Song-Beverly Consumer Warranty Act**

Aquair's first cause of action alleges that Gulf Stream willfully violated the Song-Beverly Consumer Warranty Act, California Civil Code § 1790 et seq. ("the Act"). According to Aquair, the Vehicle is a "consumer good" covered by an "express warranty," as those terms are defined in the Act, and Gulf Stream is the "manufacturer" of the Vehicle. See Compl. ¶¶ 13-15; Cal. Civ. Code §§ 1791(a), (j), 1791.2(a)(1). Gulf Stream therefore

-6-

has certain duties to Aquair under the Act, and the alleged breach of those duties is a violation of the Act and the basis of Aquair's claim.  See Compl. ¶ 20.  Specifically, Aquair alleges violation of section 1793.2.  Id.  The relevant provision of that statute appears to be section 1793.2(d)(2), which provides as follows:

> If the manufacturer or its representative in this state is unable to service or repair a new motor vehicle, as that term is defined in paragraph (2) of subdivision (e) of Section 1793.22, to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle . . . or promptly make restitution to the buyer . . . . However, the buyer shall be free to elect restitution in lieu of replacement, and in no event shall the buyer be required by the manufacturer to accept a replacement vehicle.

Cal. Civ. Code § 1793.2(d)(2).  The Act also defines the term "new motor vehicle."

> "New motor vehicle" means a new motor vehicle that is bought or used primarily for personal, family, or household purposes. "New motor vehicle" also means a new motor vehicle with a gross vehicle weight under 10,000 pounds that is bought or used primarily for business purposes by a person, including a partnership, limited liability company, corporation, association, or any other legal entity, to which not more than five motor vehicles are registered in this state. "New motor vehicle" includes the chassis, chassis cab, and that portion of a motor home devoted to its propulsion, but does not include any portion designed, used, or maintained primarily for human habitation, a dealer-owned vehicle and a "demonstrator" or other motor vehicle sold with a manufacturer's new car warranty but does not include a motorcycle or a motor vehicle which is not registered under the Vehicle Code because it is to be operated or used exclusively off the highways.

-7-

1  Id. § 1793.22(e)(2).

2  Gulf Stream contends that because Aquair is a corporate
3  entity, the primary use of the Vehicle must be for business
4  purposes rather than "personal, family, or household purposes,"
5  and that, as a result, the protections of the Act do not apply
6  because the Vehicle weighs more than 10,000 pounds. See Mot. at
7  5; Reply at 2-3. Aquair indicated on the Contract at the time of
8  purchase that the primary use for the Vehicle would be "personal,
9  family or household." See Compl. ¶ 5; Contract. Gulf Stream also
10 asks the Court to take judicial notice of the weight of the
11 Vehicle. See Request for Judicial Notice ("RJN"), Docket No. 6, ¶
12 2, Exs. B, C. The Complaint contains no reference to the weight
13 of the Vehicle.

14 The Court finds that the applicability of the Act to Aquair
15 and the Vehicle is contingent on factual issues the Court cannot
16 resolve at this time. The Court therefore DENIES Gulf Stream's
17 motion to dismiss Aquair's Song-Beverly cause of action. This
18 ruling in no way prejudices Gulf Stream's right to raise this
19 issue again at summary judgment or at trial.

21 **V.    CONCLUSION**

22 For the reasons described above, the Court GRANTS Gulf
23 Stream's Motion to Dismiss as it relates to Citrino and Geiger,
24 and DENIES the motion as it relates to Aquair's claim under the
25 Song-Beverly Consumer Warranty Act. The dismissal of Citrino and
26 Geiger is without prejudice. Plaintiffs may file an amended
27 complaint addressing the deficiencies identified herein no later

-8-

than 30 days from the date of this order.

IT IS SO ORDERED.

Dated: September 04, 2008

                                        UNITED STATES DISTRICT JUDGE