UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AQUAIR VENTURES, LLC, ANTONIA CITRINO, and JOSEPH GEIGER,<br><br>    Plaintiffs,<br><br>   v.<br><br>GULF STREAM COACH, INC.,<br><br>    Defendant. | No. C-08-2903 SC<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY <u>JUDGMENT</u> |

## I. **INTRODUCTION**

Aquair Ventures, LLC ("Plaintiff" or "Aquair") brought this suit against Gulf Stream Coach, Inc. ("Defendant" or "Gulf Stream") in the Sonoma County Superior Court. <u>See</u> Notice of Removal, Docket No. 1, Ex. A ("Compl."). Aquair seeks to recover damages for Gulf Stream's alleged willful violation of the Song-Beverly Consumer Warranty Act, California Civil Code section 1790, <u>et seq.</u>, violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, <u>et seq.</u>, and negligence. <u>See id.</u> Gulf Stream invoked the Court's diversity jurisdiction and removed the action from the Superior Court on June 11, 2008. <u>See</u> Notice of Removal.

Before the Court is Gulf Stream's Motion for Partial Summary Judgment. Docket No. 25. Aquair filed an Opposition and Gulf Stream filed a Reply. Docket Nos. 29, 33. Having considered the parties' arguments and supporting declarations thoroughly, the Court hereby GRANTS Gulf Stream's Motion for the reasons set forth

below.

## II. BACKGROUND

In May 2006, Aquair purchased a new 2006 Gulf Stream Tour Master motor home ("the RV") from California RV Supercenter ("Dealer"), a Gulf Stream dealer, for $206,543.00. Suddon Decl. ¶ 8.[1] At the time of purchase, Aquair and the Dealer executed a Retail Installment Sale Contract. Id. Ex. A ("Contract"). Aquair is the only name that appears in the "Buyer" section at the top of the Contract. Id. In seven different places on the Contract, Aquair signed as the buyer and guarantor. Id. Each signature appears to have been executed by Citrino, in the form "Aquair Ventures, LLC by Antonia D. Citrino, Member." Id. Aquair indicated that the primary use for which the RV was purchased was "personal, family or household." Id. Citrino and her husband, Joseph Geiger, are the sole owners of Aquair, a Montana limited liability corporation. See Citrino Decl. ¶¶ 2-7.[2]

At the time of purchase, the RV was covered by a warranty. The warranty protected the floor, walls, and roof for the lesser of two years or 24,000 miles, and the construction of the RV and its original components for the lesser of one year or 12,000

---

[1] Anthony Suddon, the Director of Consumer Affairs for Gulf Stream, filed a declaration in support of Gulf Stream's Motion. Docket No. 26.

[2] Antonia Citrino, a member of Aquair, submitted a declaration in opposition to Gulf Stream's Motion. Docket No. 30. Citrino and her husband, Joseph Geiger, were originally plaintiffs in this matter. See Compl. However, on Gulf Stream's prior motion, the Court dismissed Citrino and Geiger's claims because they lacked standing. See Docket No. 17.

-2-

1  miles.  Compl. ¶ 7.  The warranty included all repairs and
2  adjustments, including parts and labor.  Id.  Aquair alleges that
3  at the time of purchase, the RV was defective.

4  The RV is a Gulf Stream Tour Master motor home, with the
5  vehicle identification number 4UZAAB2CY46CW81682.  Suddon Decl. ¶
6  8.  The gross vehicle weight of the chassis of the RV exceeds
7  32,000 pounds, excluding cargo and passengers.  See id. ¶ 9, Ex. B
8  (Tour Master brochure).

9  Aquair and the dealer executed the Contract in Santa Rosa,
10 California.  Citrino Decl. ¶ 2.  At the same time and place, they
11 also executed a Delayed Warranty Start Form.  Id. ¶ 11, Ex. B.  On
12 the warranty form, under the heading "Owner Acknowledgment," it
13 states, "My signature on the line below represents acknowledgment
14 of receipt of the vehicle herein described."  Id. Ex. B.  Citrino
15 signed the form for Aquair below that statement.  Id.  However,
16 Aquair received the keys to the RV on delivery in Boomtown,
17 Nevada.  See id. ¶ 12; Suddon Decl. ¶ 10.  In an email to Suddon
18 regarding the RV, Citrino stated, "On 5/18/06, we took possession,
19 all cash of a Tour master 2006, 40 ft, Stock # 1151, Model 9392,
20 Silver and Black, Out of State Delivery was taken in Nevada, just
21 over border at Boom town [sic]."  Suddon Decl., Ex. C.

### III. LEGAL STANDARD

24 Entry of summary judgment is proper "if the pleadings, the
25 discovery and disclosure materials on file, and any affidavits
26 show that there is no genuine issue as to any material fact and
27 that the movant is entitled to judgment as a matter of law."  Fed.

-3-

1  R. Civ. P. 56(c).  "Summary judgment should be granted where the
2  evidence is such that it would require a directed verdict for the
3  moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250
4  (1986).  Thus, "Rule 56(c) mandates the entry of summary judgment
5  . . . against a party who fails to make a showing sufficient to
6  establish the existence of an element essential to that party's
7  case, and on which that party will bear the burden of proof at
8  trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In
9  addition, entry of summary judgment in a party's favor is
10 appropriate when there are no material issues of fact as to the
11 essential elements of the party's claim. Anderson, 477 U.S. at
12 247-49.

**IV. DISCUSSION**

Gulf Stream moves for summary judgment on Aquair's first cause of action, which alleges that Gulf Stream willfully violated the Song-Beverly Consumer Warranty Act ("the Act").  Gulf Stream contends that Aquair is not entitled to the Act's protections for two reasons: first, because Aquair took delivery of the RV outside of California, it is not entitled to the benefits the Act offers consumers in California; second, the RV does not qualify as a "new motor vehicle" as that term is defined in the Act.  The Court addresses each issue.

**A. Delivery in California**

The protections offered in the Act "apply only to vehicles sold in California." Cummins, Inc. v. Super. Ct., 36 Cal. 4th 478 (2005).  The parties do not dispute that Aquair signed the

-4-

1 Contract in Santa Rosa, California, nor that Aquair took physical
2 possession of the keys and the RV in Nevada.  The dispute is
3 whether, for the purposes of the Act, this constitutes delivery in
4 California or in Nevada.  Gulf Stream contends that the Act
5 focuses solely on the physical delivery.  In response, Aquair
6 claims that unless the parties' agreement specifies out-of-state
7 delivery, the Act still applies if the agreement was executed in
8 California.

Under the Act, "sale" means "(1) the passing of title from the seller to the buyer for a price, or (2) a consignment for sale." Cal. Civ. Code. § 1791(n).  "California law is clear that when title passes outside of California, the [Act] does not apply." Gusse v. Damon Corp., 470 F. Supp. 2d 1110, 1113 (C.D. Cal. 2007) (citing Cummins, 36 Cal. 4th at 478).  Thus, as in Gusse, the dispositive question here is whether title passed in California or Nevada.  See id.  The Gusse court resolved this issue by referencing the California Commercial Code.  Id.  Section 2401 of the California Commercial Code provides:

> Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading
>
> (a) If the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; but

1                (b)  If the contract requires delivery at
                      destination, title passes on tender
2                     there.

3   Cal. Com. Code § 2401(2).

4        The facts in Gusse are analogous to those before the Court
5   now.  The parties in that suit signed the contract and a "purchase
6   acceptance report" in California.  470 F. Supp. 2d at 1112;
7   Citrino Decl. ¶ 11, Exs. A, B.  As Aquair did, the plaintiff in
8   Gusse loaded the vehicle in California, but did not receive the
9   keys until the dealer's agent drove the vehicle across state lines
10  to avoid tax liability.  470 F. Supp. 2d at 1113; see Citrino
11  Decl. ¶ 12.  The court in Gusse held that because the contract did
12  not explicitly require delivery in Arizona, the contract was a
13  "shipment contract," falling under California Commercial Code §
14  2401(2)(a), such that title passed at the time the contract was
15  signed.  470 F. Supp. 2d. at 1113-14.  The court noted that under
16  California law, there is a presumption that a contract is a
17  shipment contract, rather than a delivery contract.  Id. at 1113;
18  see also Wilson v. Brawn of Cal., Inc., 132 Cal. App. 4th 549, 556
19  (Ct. App. 2005).  The contract at issue here does not require
20  delivery in Nevada or any other specific destination.  As such, it
21  is a shipment contract, and title passed from the Dealer to Aquair
22  at the time the Dealer shipped the RV from California.  The RV
23  therefore falls under the Act as a good purchased in California.

24       Gulf Stream's attempts to distinguish Gusse fall short.
25  First, Gulf Stream argues that the Gusse court failed to consider
26  Cummins, supra, and Davis v. Newmar Corp., 136 Cal. App. 4th 275
27  (Ct. App. 2006).  Reply at 4.  Gulf Stream overlooks the relevant

-6-

citations to both cases in the Gusse decision, as well as the discussion explicitly distinguishing the facts of Gusse from those of Davis on the grounds that the contract in the latter case had a provision requiring delivery in Nevada, while the former was silent on the issue. See Gusse, 470 F. Supp. 2d at 1113-14 & n.5. That distinction is critical, and is relevant here, as the subject Contract did not require the Dealer to deliver the RV to Aquair in Nevada.

Gulf Stream also contends that the present facts are distinguishable from Gusse because in that case, "the owner directed a third party to transport the vehicle outside of California", while it was the Dealer who did that in the present matter. Reply at 5. The Court reads the facts of Gusse differently. The relevant portion of the discussion follows:

> Importantly, the contract does not provide for delivery to a specific location and it does not require that the Motorhome be tendered for Gusse's acceptance in Arizona. . . . La Mesa RV [the dealer] then hired a third party driver to take the Motorhome wherever Gusse wanted it transported, and Gusse directed the driver to transport the Motorhome to Arizona.

Gusse, 470 F. Supp. 2d at 11114. Contrary to Gulf Stream's assertion, it was the dealer who arranged for transport out of state. The same scenario played out here. Despite the fact that the Contract does not mention delivery in Nevada, the Dealer arranged for the RV to be driven there after Aquair signed the Contract and warranty form acknowledging receipt of the RV in Santa Rosa, California. See Citrino Decl. ¶¶ 11-12.

The Court finds that the facts here are more comparable to

-7-

1  those in <u>Gusse</u> than <u>Davis</u>, and that the reasoning of <u>Gusse</u> is
2  consistent with California law.  The Court therefore concludes
3  that title to the RV passed to Aquair in California and that Gulf
4  Stream is not entitled to judgment on this issue.

**B.   Whether Aquair May Bring Suit Under the Act**

6  The parties frame this issue as a question of whether or not
7  the RV is a "new motor vehicle" as that term is defined in the
8  Act.  Gulf Stream contends that the RV is not a new motor vehicle
9  and therefore falls outside the protection of the Act.  Aquair
10 disputes this.  A more appropriate question is whether a business
11 entity such as Aquair may bring suit under the Act.  It may not.

12 Aquair's first cause of action alleges that Gulf Stream
13 willfully violated the Act.  According to Aquair, the RV is a
14 "consumer good" covered by an "express warranty," as those terms
15 are defined in the Act, and Gulf Stream is the "manufacturer" of
16 the RV.  <u>See</u> Compl. ¶¶ 13-15; Cal. Civ. Code §§ 1791(a), (j),
17 1791.2(a)(1).  What Aquair fails to demonstrate is that it is a
18 "buyer."  The Act establishes a cause of action for a buyer for
19 breach of an implied or express warranty:

> Any <u>buyer</u> of consumer goods who is damaged by
> a failure to comply with any obligation under
> this chapter or under an implied or express
> warranty or service contract may bring an
> action for the recovery of damages and other
> legal and equitable relief.

24 Cal. Civ. Code § 1794(a) (emphasis added).  The Act explicitly
25 defines "buyer" to refer to individuals rather than to all
26 persons:

27 "Buyer" or "retail buyer" means any <u>individual</u>

-8-

> who buys consumer goods from a person engaged in the business of manufacturing, distributing, or selling consumer goods at retail. As used in this subdivision, "person" means any individual, partnership, corporation, limited liability company, association, or other legal entity that engages in any of these businesses.

Id. § 1791(b) (emphasis added).  The Act "was originally intended to protect individual consumers."  Park City Servs., Inc. v. Ford Motor Co., 144 Cal. App. 4th 295, 306 (Ct. App. 2006).  The California Legislature subsequently expanded the Act to cover vehicles purchased for business purposes by including the following definition of "new motor vehicle":

> "New motor vehicle" means a new motor vehicle that is bought or used primarily for personal, family, or household purposes. "New motor vehicle" also means a new motor vehicle with a gross vehicle weight under 10,000 pounds that is bought or used primarily for business purposes by a person, including a partnership, limited liability company, corporation, association, or any other legal entity, to which not more than five motor vehicles are registered in this state. "New motor vehicle" includes the chassis, chassis cab, and that portion of a motor home devoted to its propulsion, but does not include any portion designed, used, or maintained primarily for human habitation, a dealer-owned vehicle and a "demonstrator" or other motor vehicle sold with a manufacturer's new car warranty but does not include a motorcycle or a motor vehicle which is not registered under the Vehicle Code because it is to be operated or used exclusively off the highways.

Id. § 1793.22(e)(2).  When this definition was adopted, however, the definition of "buyer" was not changed.  See Park City Servs., 111 Cal. App. 4th at 306; Cal. Civ. Code § 1791(b).  The court in Park City Services concluded that the Act includes as "buyers"

-9-

1   only those corporate purchasers "to whom not more than five motor
2   vehicles are registered in the state." Id.
3       There is no dispute that Aquair is a corporate entity rather
4   than an individual, and that Aquair is the only purchaser of the
5   RV. See Citrino Decl. ¶¶ 5, 8; Contract. However, Aquair asserts
6   that it is a buyer under the Act despite not fitting the explicit
7   statutory definition. See Opp'n at 4-5. Aquair relies on Park
8   City Services for this contention, because the court there held
9   that the amendment to the Act included corporate purchasers with
10  fewer than five vehicles registered in California. Id.; see also
11  Park City Servs., 144 Cal. App. 4th at 306. In Park City
12  Services, however, the weight of the vehicle in suit was not at
13  issue, so the court there did not address this aspect of the
14  definition of "new motor vehicle." There is nothing in the
15  decision to suggest that the Park City Services court read that
16  limitation out of the statute, yet Aquair fails to address the
17  weight of the RV in its briefing. Under the current version of
18  the Act, two categories of vehicles qualify for protection: (1)
19  vehicles purchased by individual buyers and used "primarily for
20  personal, family, or household purposes" and (2) vehicles
21  purchased by any buyer, individual or corporate, used for business
22  purposes, provided that the vehicle weighs less than 10,000 pounds
23  and that the purchaser has fewer than five vehicles registered in
24  the state. See Cal. Civ. Code § 1793.22(e)(2).
25      Aquair may not bring suit under the Act. Because Aquair is
26  not an individual, it is not a buyer for the purposes of the Act,
27  and therefore may not bring suit over the RV, which it purchased

-10-

for "personal, family, or household purposes."[3]  Thus, Aquair may only maintain this action if it has fewer than five vehicles registered in California and if the vehicle that is the subject of the suit weighs less than 10,000 pounds.  It is not disputed that the RV weighs over 32,000 pounds.  Suddon Decl. ¶ 9, Ex. B. Aquair is therefore not entitled to bring suit over the RV under the Act.

## V.  CONCLUSION

For the reasons described above, the Court concludes that the RV is not protected under the Song-Beverly Consumer Warranty Act, and that Aquair is not entitled to bring suit under that statute. The Court therefore GRANTS Gulf Stream's Motion for Partial Summary Judgment.  Aquair's first cause of action is DISMISSED.

IT IS SO ORDERED.

Dated: January 21, 2009

_____
UNITED STATES DISTRICT JUDGE

---

[3] Because Aquair is not an individual, its assertion that it purchased the vehicle for personal, family, or household purposes is immaterial, and the Court need not resolve the parties' dispute over this issue to rule on the Motion.

-11-